In the Matter of the Marriage of

Nancy J. JONES,
nka Nancy J. Miller,
*Respondent,*

*and*

Ronald R. JONES,
*Appellant.*

(97-DO-0594-AB; CA A108877)

17 P3d 491

Steven K. Chappell argued the cause and filed the brief for appellant.

Kevin J. McCarty argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Husband appeals from the trial court's denial of his motion for reduction or termination of his $517 monthly indefinite spousal support obligation. ORS 107.135. He contends that the trial court erroneously excluded evidence of the parties' current and marital standards of living. He also argues that the trial court did not properly consider the effect of wife's remarriage and her new spouse's income in evaluating whether there had been a substantial change of circumstances. We review *de novo*, ORS 19.415(3), and modify the judgment.

The parties were married for 12 years and their marriage was dissolved in December 1997. At that time, both parties were of retirement age. Both parties' sole source of income was from retirement benefits. Husband's monthly income was $1,632. Wife's monthly income was $635. The parties received equal shares of property valued at approximately $100,000 each. In the judgment of dissolution, husband was ordered to pay $517 per month to wife in spousal support for an indefinite time. Under the court's award, husband had $1,115 of income per month left after paying spousal support, and wife had $1,152 per month, including spousal support.

Wife remarried 18 months after the dissolution. Her new spouse has $1,049 in monthly income from social security benefits. Both wife and her spouse have worked sporadically after their marriage, but neither is currently working. Neither husband nor wife remained in the parties' marital residence. Wife purchased the residence in which she and her spouse live. Neither party has had a significant increase in expenses since the judgment. Husband has begun to receive interest income from his portion of the property award in the amount of approximately $1,000 per year. Wife did not offer evidence as to interest or investment income from her share of the property award. Her banking records show monthly deposits and withdrawals that appear to reflect a household income significantly higher than that to which she testified.

In the hearing that led to this appeal, husband petitioned the trial court for a reduction or termination of his

spousal support obligation. He argued that wife has additional income available to her because of her remarriage, which reduces or negates her need for support from him. At the hearing, husband offered evidence of the parties' standard of living during the marriage, of their current standards of living and of the purposes and goals of the spousal support award at the time of the initial judgment. However, the trial court excluded evidence of the parties' past and current standards of living.

After hearing the evidence, the trial court found that the parties' initial spousal support judgment was an attempt at an equalization of the parties' income at the time of the judgment. It found that the parties' retirement income had not increased and that both parties had some limited interest income from their respective shares of the division of marital assets. It found that

> "[Husband] failed to prove a substantial change in circumstances justifying modification of the spousal support judgment. The initial purpose of the award was to equalize the income between the parties. The only change in circumstances is [wife's] remarriage to a 70 year old retiree with an income limited to social security benefits. [Wife's] standard of living has not improved over that which she enjoyed while married to [husband]."

Consequently, the court denied husband's motion for modification or termination of spousal support and awarded wife attorney fees.

The first question before us is whether the trial court erred in excluding evidence of the parties' past and current standards of living. Husband sought to introduce evidence of how often the parties took vacations, ate at restaurants, and engaged in social activities during the last few years of their marriage. He also elicited testimony about wife's current social and economic activities to show that her standard of living had increased after her marriage to her new husband. Wife objected to the evidence on relevance grounds.

The threshold issue before a trial court in a modification proceeding is whether there has been a substantial

unanticipated change in either party's economic circumstances since the date of the judgment. ORS 107.135. Evidence that is relevant to that inquiry is any evidence that tends "to make the existence of any fact that is of consequence * * * more probable or less probable than it would have been without the evidence." OEC 401. Evidence that is relevant under that definition should be admitted, in the absence of another reason for exclusion. OEC 402. A fact of significant consequence in this case is wife's economic circumstances, both presently and at the time of the judgment. Given that wife's reports of her present lifestyle and documented income are subject to question on this record, the proffered evidence was relevant to establish a change in economic circumstances, and its exclusion was error.[1]

 Because we have the benefit of the excluded evidence, we continue our *de novo* review with it as part of the record. At the time of the judgment, wife had $635 in income and $517 in spousal support for a total household monthly income of $1,152. She supported only herself with that amount. After her remarriage, wife continues to receive $635 in retirement income. In addition, at least some portion of her spouse's monthly income is potentially attributable to her. *Hoag and Hoag*, 152 Or App 288, 291, 954 P2d 184 (1998).

Husband argues that when wife's income of $635 is added to her spouse's income of $1,049, they have a combined income of $1,674 or greater, which is more than wife's income after the judgment. Husband's calculation is partially consistent with the reasoning we used in *Bliven and Bliven*, 106 Or App 93, 96, 806 P2d 177 (1991), and he argues that the decision in this case is controlled by *Bliven*. Wife argues, however, that she should not be credited with any portion of her spouse's income that he withholds from their household to pay for his personal expenses. She contends that his contribution to their household is really only $624, because he first pays his own golfing expenses, medical bills, clothing and credit card bills from his monthly income and only makes the remainder available to the household. She calculates that if

---

[1] Wife also argues that the evidence was inadmissible because it was not mentioned in the pleadings. We disagree with the proposition that relevant evidence, to be admissible, must also be pleaded in the pleadings under ORS 107.135.

her income of $635 is added to her spouse's contribution of $624 to household expenses, and then divided in half, her half of that amount is actually $630, or less than she was receiving as income at the time of the judgment. On appeal, wife contends that our decision in *Hall and Hall*, 86 Or App 51, 55, 738 P2d 218 (1987), governs the calculation in this case. *Bliven* and *Hall* employ different methodologies to arrive at their results.

■　We have emphasized in the past that "modification of a spousal support award is not a matter of applying a mathematical formula[.]" *Hoag*, 152 Or App at 293. *Hoag* is illustrative of the concept that, like other determinations in a modification proceeding, the determination of whether a party should have a new spouse's income attributed to him or her, and in what amount, is a case-specific inquiry. In past cases, where the attribution of a new spouse's income to a party has been in dispute, courts have considered factors such as whether the new spouse has other child or spousal support obligations, *Bates and Bates,* 303 Or 40, 47, 733 P2d 1363 (1987), whether the new spouse has independently incurred medical bills, *Ganger and Little*, 139 Or App 350, 356-57, 911 P2d 1276 (1996), and whether the party and the new spouse have entered into and abide by an agreement about how their income will be distributed between them. *Bishop and Bishop*, 137 Or App 112, 903 P2d 383 (1995); *Haywood and Haywood*, 120 Or App 339, 852 P2d 891 (1993).[2] Those factors, however, are not exhaustive, and each case must be determined on its own facts. Our decisions in *Bliven* and in *Hall* should be understood in that light. At its most basic level, the guiding principle for courts is to do what is most fair for the parties in light of their individual circumstances.

With that understanding, we turn to a determination of whether wife's spouse's income is potentially available

---

[2] Although we have subsequently re-evaluated *Haywood* insofar as it placed the burden of proof on the recipient spouse to show that remarriage was not a substantial change of circumstances warranting modification, *see Ganger and Little*, 139 Or App 350, 911 P2d 1276 (1996), we have continued to endorse its holding that a court must examine the evidence of each case to determine whether a new spouse's income is properly attributable to the party.

to her, and, if so, to what extent. Wife's only testimony on the issue of why it is not available to her was:

"Q. How much is [new husband's social security benefit]?

"A. $1,049.

"* * * * *

"Q. And of that amount, how much is he able to contribute to household expenses on a monthly basis?

"A. Well, he has his own expenses and he just contributes—we try to share in that in our household expenses.

"Q. So does he have all of the $1,049 to contribute to monthly expenses?

"A. He has his bills and our bills.

"Q. Okay. Are his bills other than household expenses?

"A. Yes, yes.

"Q. What bills does he have that don't relate to the household? .

"A. He has a Visa and he has a department store where he buys clothing when he needs it and his golf. * * * As far as payments, I think he pays about $100 on Visa and I know he pays about $200 a month on golf.

"* * * * *

"We're both on the same checking account, but he has his own and I have mine. It's just in case something ever happened to either one of us that we're both on the checking account.

"* * * * *

"Q. Does your husband, in addition to the Visa bill, the credit card and the golf that you testified about, does your husband have any medical or dental ongoing bills?

"A. Yes, he has to see a gum specialist, I forget what they call it, once a month and it's around $100 a month."

Other documentary evidence in the record establishes that wife and her spouse share a checking account from which utility, telephone and grocery bills and other household expenses are paid. During the period in which wife

has been married to her new spouse, the total expenditures from the shared checking account exceed wife's monthly stated income in every month, except one. Despite wife's testimony that she and her spouse keep separate accounts, we infer from the documentary record that they in fact commingle their assets and income in such a way that their shared household income consists of the income from both sources. In view of the entire evidentiary record, we find that husband has demonstrated an unanticipated substantial increase in the monies available to wife since the judgment.

The question remains whether support should be terminated or reduced under these circumstances. An award of spousal support should be terminated only when the purpose of the initial award has been met. *Bates*, 303 Or at 46. Here, we agree with the trial court that the purpose of the initial award was a long-term income equalization between husband and wife. The termination of spousal support would leave wife with a monthly income of $792[3] and husband with income of $1,632. We conclude that termination of spousal support is not warranted on those facts. However, the increase in income available to wife could warrant a reduction in its amount, in light of the purpose of the spousal support award.

Both parties are living on limited incomes, and there is no prospect of increased income in the future. The evidence shows that husband's claimed monthly expenses are $2,046 and that wife's claimed monthly expenses are approximately $2,014. The continued equalization of income between husband and wife will allow both to enjoy a slightly increased income each month. Therefore, we conclude that husband's support obligation should be reduced to $420 per month,[4] leaving both parties with total monthly income of $1,212 each.

Reversed and remanded for entry of a judgment modifying wife's spousal support award to $420 per month.

---

[3] This amount represents wife's income of $635 plus her spouse's income of $1049, minus her spouse's separate medical expenses, divided in half.

[1] In arriving at that figure, we have attributed $949 of wife's spouse's income to the combined household. Although husband contends that wife and her spouse have more income than they acknowledge, we cannot determine the correctness of that assertion on the record before us.